IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAWN K. HANKINS | : | CIVIL ACTION |
| | : | NO. 13-4929 |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Commissioner of Social Security | : | |
| | : | |
| O'NEILL, J. | : | May 6, 2015 |

## MEMORANDUM

Plaintiff Dawn Hankins brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the adverse final decision of the Commissioner of the Social Security Administration denying her claims for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Presently before me are the objections of defendant Commissioner (Dkt. No. 20) to the report and recommendation (R&R) of Magistrate Judge M. Faith Angell remanding the Commissioner's final decision in this matter for further review (Dkt. No. 19), plaintiff's reply (Dkt. No. 22), the parties' opening briefs (Dkt. Nos. 9, 12, 14), the transcript of their oral argument before Magistrate Judge Angell (Dkt. No. 18) and the administrative record (Dkt. No. 6). For the reasons that follow, I will affirm and adopt the R&R in part and modify it in part.

## BACKGROUND

Hankins was born on May 13, 1966. See AR at 70. Hankins seeks a finding of disability as of February 1, 2010. See AR at 27. Hankins last worked as a support counselor and as a companion caregiver. See AR at 32-33. Hankins contends that she is disabled due to her back impairment and affective/mood impairment. See AR at 29-30.

1

At step one of the five-step disability evaluation process, the administrative law judge (ALJ) deferred finding whether Hankins has engaged in substantial gainful activity since her alleged date of disability onset. See AR at 29. At step two, the ALJ determined that Hankins' back impairment was severe, but that her affective/mood impairment was non-severe. See AR at 29-31. At step three, the ALJ found that Hankins did not have an impairment or combination of impairments that meets the severity of the statutorily listed impairments. See AR at 31. The ALJ then considered both Hankins' mental and her physical limitations and found Hankins' residual functional capacity (RFC) was limited to performing a restricted range of sedentary level exertional work. See AR at 31-35. At step four, the ALJ determined that Hankins was unable to perform her past relevant work. Id. Finally, at step five, the ALJ found that Hankins did not have any acquired job skills which were transferable to occupations within her residual functional capacity, but that there were jobs in significant numbers in the national and regional economies that Hankins could perform. See AR at 35-36. Based on her finding at step five, the ALJ concluded that Hankins was not disabled as defined by the Social Security Act. See AR at 37.

Hankins appealed the ALJ's decision to the Appeals Council and was denied review. See AR at 2-4. Hankins then filed this action seeking judicial review of the administrative determination. See Dkt. No. 3. Hankins contends that the ALJ failed to properly assess her residual functional capacity and did not give appropriate deference to the medical opinions in the record. See Dkt. No. 19 at ECF 7; Dkt. No. 9 at ECF 7. I referred this matter to Magistrate Judge Angell (Dkt. No. 13) who issued a R&R recommending remand of the matter to the ALJ for further review (Dkt. No. 19). The R&R finds that the ALJ properly accounted for hospitalizations, surgeries and recovery time in determining whether Hankins could work on a

regular and continuing basis.  The R&R also concludes, however, that the ALJ failed (1) to take Hankins' obesity into account in determining Hankins' RFC and (2) to give appropriate deference to medical opinions regarding Hankins' mental impairment at step two.  See Dkt. No. 19 at ECF 10-13.

The Commissioner objects to the R&R on three grounds.  First, the Commissioner contends that the R&R fails to consider Hankins' admission during the administrative hearing that she cannot meet the Social Security Act's definition of disability during the relevant period and thus the R&R should dispose of Hankins' case on that basis.  See Dkt. No. 20 at ECF 2-4.  Second, the Commissioner contends that the ALJ sufficiently considered Hankins' obesity pursuant to the standard set forth in Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005).  See id. at ECF 4-6.  Third, the Commissioner contends that the ALJ did not improperly disregard medical opinion in her step two determination that Hankins' mental impairment is non-severe and alternatively that any error at step two was harmless.  See id. at ECF 6-11.

## STANDARD OF REVIEW

### I. Review of the Commissioner's Final Disability Decision

Final disability determinations of the Commissioner are reviewable by commencing a civil action under 42 U.S.C. § 405(g).  The Court's review of the Commissioner's final disability determination is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."  Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).  The Court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record . . . but exercise[s] plenary review of all legal issues . . . ."  Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  "Thus, even if the ALJ's decision is supported by substantial

3

evidence, the court can overturn that decision if it finds that it was based upon an incorrect legal standard." Lee v. Astrue, No. 06-5167, 2007 WL 1101281, at *1 (E.D. Pa. Apr. 12, 2007), citing Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983).  "Substantial evidence has been defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate.'"  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001), citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

## II.      Review of Objections to the R&R

A district court has discretion to determine the extent to which it will review the R&R of a magistrate judge.  Bivings v. Wakefield, No. 07-929, 2009 WL 4857432, at *1 (E.D. Pa. Dec. 15, 2009); see also Jones v. Astrue, 872 F. Supp. 2d 428, 430-31 (E.D. Pa. 2012).  "At a minimum, the court should be satisfied that there is no clear error on the face of the record, and should 'give some reasoned consideration to the magistrate's report before adopting it as the decision of the court.'"  Id., citing Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).  The Court reviews de novo, however, any sections of the R&R to which the parties have filed objections.  See 28 U.S.C. § 636(b)(1)(C); Brown v. Astrue, 649 F.3d 193, 195-96 (3d Cir. 2011).  On review, the Court may accept, reject, or modify the R&R, receive more evidence or return the matter to the magistrate judge with instructions.  See 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

As a preliminary matter, upon review of the R&R I will affirm and adopt those sections that have not been objected to by the parties – namely the R&R's finding that the ALJ's RFC determination properly considered Hankins' hospitalizations, surgeries and recovery time in determining whether Hankins could work on a regular and continuing basis.  I will now turn to the Commissioner's objections.

4

I.      **Durational Disability Requirement Determination**

The Commissioner contends that the R&R errs by not determining that Hankins failed to meet the durational disability requirement.  See Dkt. No. 20 at ECF 2-4.  While Hankins has alleged that her disability began on February 10, 2010, at the administrative hearing she also testified that she "probably would have been able to do [work] before my back surgeries and things like that" (AR at 74), the first of which did not occur until May 4, 2012 (AR at 54).  The ALJ's decision, however, expressly declined to make any finding of fact or law regarding this issue:

> While the record reveals that the claimant has worked after her alleged date of disability onset (Exhibit 7D and Testimony), the undersigned defers a decision as to whether this work constitutes significant gainful activity, without any need for further analysis or development, because a final determination as to whether the claimant is disabled or not disabled may be made at a later step in the sequential evaluation process.

AR at 29.  "A district court cannot conduct a de novo review of the Commissioner's decision, or reweigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered." Johnson v. Colvin, No. 14-828, 2014 WL 6090421, at *1 (W.D. Pa. Nov. 13, 2014).  Thus, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ."  Brunson v. Astrue, No. 10-6540, 2011 WL 2036692, at *5 (E.D. Pa. Apr. 14, 2011), report and recommendation adopted, No. 10-6540, 2011 WL 2036691 (E.D. Pa. May 23, 2011).  Here, the ALJ made no determination regarding the first step in the disability determination.  I cannot stand in the shoes of the ALJ and here make that determination in the first instance.  Thus, I will overrule the Commissioner's first objection and find that the R&R appropriately does not make a determination regarding whether Hankins has met the durational disability requirement.

## II.     ALJ's Consideration of Obesity

The R&R recommends finding that the ALJ improperly failed to consider Hankins' obesity when making the RFC determination and that the case should be remanded to the ALJ on that basis.  The Commissioner objects that the ALJ sufficiently considered Hankins' obesity pursuant to the standard set forth in Rutherford, 399 F.3d at 552-53, where the Court of Appeals for the Third Circuit determined that the district court improperly remanded a disability determination to the ALJ for failing to expressly consider the claimant's obesity.  In Rutherford, the medical evidence in the record included the claimant's height and weight indicating that she was obese, but the claimant did not raise the issue of obesity before the ALJ and had "not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion" of "generalized" medical impact.  Rutherford, 399 F.3d at 553.  The Court of Appeals further reasoned that "[b]ecause her doctors must also be viewed as aware of Rutherford's obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition."  Id.

In contrast, in Diaz v. Commissioner of Social Security, 577 F.3d 500, 504 (3d Cir. 2009), the claimant "asserted—and the ALJ specifically determined—that Diaz's obesity constituted a severe impairment."  Because the ALJ had expressly determined at step two that obesity was a severe impairment, the Court of Appeals found that obesity was "required to be considered alone and in combination with her other impairments at step three" and that "absent analysis of the cumulative impact of [the claimant's] obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function."  Diaz, 577 F.3d at 504.

I find that Rutherford does not support remand to the ALJ for at least three reasons.  First, as in Rutherford, here the record indicates that Hankins "did not raise obesity as an impairment

6

or limitation before the ALJ." Rutherford, 399 F.3d at 552.  Hankins did not allege obesity as a medical condition in her disability reports (AR at 231, 253) and neither Hankins nor her counsel addressed obesity at the hearing before the ALJ.  See AR at 43-75.  Hankins has not pointed to any place in the record indicating the contrary.  See Dkt. No. 22 at 3 n.5.

Second, Hankins has not shown how consideration of her obesity expressly would "affect the outcome of the case," in any more than a generalized way.  Rutherford, 399 F.3d at 553. Hankins simply notes that obesity "can complicate musculoskeletal impairments, as well as depression" but does not connect that argument to any of the ALJ's specific findings.  Dkt. No. 22 at ECF 3 n.5.  Phrased another way, the ALJ's failure to directly consider Hankins' obesity was harmless.  The ALJ found that Hankins could only perform a restricted range of sedentary level exertional work, see AR at 35, which is the lowest level of physical activity assessed, see 20 C.F.R. § 416.967(a), and Hankins "does not show how consideration of [ ] specific limitations would change that assessment."  Jones, 2011 WL 4478489, at *9; see Dkt. No. 22 at ECF 3 n.5.

Third, there is also no question that Dr. Thain's medical report contained examination notes that "sufficed to alert the ALJ that obesity could be a factor" such as Hainkins' height, weight and body mass index.  Rutherford, 399 F.3d at 553; AR at 289; see also AR at 352.  Here, the ALJ expressly considered Dr. Thain's medical evidence in her decision, though she generally assigned it little weight.  See AR at 35.  Additionally, the "the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for [her] findings regarding [the claimant's] limitations and impairments."  Rutherford, 399 F.3d at 553.

Dr. Thain concluded that Hankins was "capable of performing a limited range of light level exertional work" but the ALJ concluded that "additional evidence received at the hearing level is persuasive that the claimant is more physically limited than originally thought."  AR at

35. Thus, Hankins contends that her case is distinguishable from <u>Rutherford</u> because the ALJ did not "adopt" the opinion of the medical report in which obesity limitations were considered. That distinction is not convincing for two reasons. First, regardless of whether the ALJ completely adopted Dr. Thain's medical conclusions, she reviewed the record and thus made at least "indirect consideration of that condition." <u>Rutherford</u>, 399 F.3d at 553. Second, to the extent the ALJ did not "adopt" Dr. Thain's opinions, that only inured to Hankins' benefit since the ALJ found she was <u>more</u> physically restricted than Dr. Thain opined. Further, the ALJ's treatment of Hankins' obesity is clearly distinguishable from <u>Diaz</u>, since Hankins did not raise the issue before the ALJ and the ALJ did not determine Hankins' obesity was severe. Thus, I find that the ALJ's decision was supported by substantial evidence with regard to Hankins' obesity and conclude that remand is not warranted on this issue. I will rule in favor of the Commissioner on her second objection.

**III.  ALJ's Severity Analysis**

The R&R recommends finding the ALJ impermissibly rejected the opinions of all physicians of record in favor of the ALJ's own credibility determinations in finding Hankins' depression non-severe at step two and therefore concludes that the ALJ also failed to include any limitations stemming from psychological issues in the RFC analysis. <u>See</u> Dkt. No. 19, 11-13. The Commissioner objects that severity is a determination reserved to the Commissioner and argues that the ALJ did not err in her severity determination. Alternatively, the Commissioner has argued at various points in these proceedings that any error the ALJ committed at step two was harmless error because the disability analysis proceeded beyond step two based on Hankins' physical impairment and the ALJ considered Hankins' mental impairment in her RFC determination.

### A. Severity Determination

An impairment or combination of impairments can be found "not severe" at step two only if the evidence establishes a slight abnormality or a combination of slight abnormalities which have "no more than a minimal effect on an individual's ability to work." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). Thus, "[i]f the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue." Id. While the burden at step two rests with the claimant, the Court of Appeals has repeatedly "instructed that step two of the sequential analysis 'is a de minimis screening device to dispose of groundless claims . . . [and] reasonable doubts on severity are to be resolved in favor of the claimant.'" Magwood v. Comm'r of Soc. Sec., 417 F. App'x 130, 132 (3d Cir. 2008), citing Newell, 347 F.3d at 546-47. The Court of Appeals has also "reiterated" the principle that where there is "objective medical evidence supporting the claimant's complaint . . . [t]he ALJ's refusal to attach any significant weight to the treating physician's opinion . . . 'may or may not be relevant in later steps of the sequential analysis . . . but they certainly do not carry the day at step two.'" Magwood, 417 F. App'x at 132, citing McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 362 (3d Cir. 2004). Instead, the Court of Appeals has given instructions to "focus upon the evidence adduced by the applicant." Magwood, 417 F. App'x at 132. Thus, "[n]ormally, only unsubstantiated or frivolous claims are denied at this early stage." Saxton v. Astrue, No. 08-3303, 2009 WL 1182008, at *4 (E.D. Pa. Apr. 30, 2009).

Combining the deferential standard of review given to the ALJ with the de minimis showing required of the claimant at step two, I am to determine "whether substantial evidence supports the ALJ's finding a claimant failed to satisfy the de minimis threshold" by reviewing

the record in its entirety. Saxton, 2009 WL 1182008, at *4, citing McCrea, 370 F.3d at 362. Here, the ALJ decided to "raise the judicial eyebrow" and invited the "close scrutiny" of that determination as the Court of Appeals has instructed. McCrea, 370 F.3d at 360. The ALJ committed error when conducting the severity analysis in two ways. First, regarding the ALJ's extensive treatment of physicians' credibility and the weighing of the evidence at step two, I "need not concern [myself] with this reasoning at length," McCrea, 370 F.3d at 362, because "[t]he ALJ's opinion of the relative weight of each piece of evidence may be relevant at later steps of the sequential analysis but '[does] not carry the day at step two.'" Saxton, 2009 WL 1182008, at *4, citing McCrea, 370 F.3d at 362 and Magwood, 2008 WL 4145443, at *2; see also Ferguson v. Schweiker, 765 F.2d 31, 36-37 (3d Cir. 1985) (finding "the ALJ acted improperly" at step two "in discrediting the opinions of [the physician] by finding them contrary to the objective medical evidence contained in the file").[1]

Second, there is no indication that the ALJ considered the severity of Hankins' claimed impairment under the required de minimis standard. Even without here considering whether the evidence adduced by Hankins would meet the de minimis showing required of her at step two, it was at least error for the ALJ not to consider Hankins' claims under that standard. Hankins has most likely provided enough evidence to carry her de minimis burden of showing her depression

---

[1] That is not to say that I do not find much of the ALJ's analysis of the reports unfounded. For example, it is indeed proper to consider that claimant's treating physician Dr. Manolo did not even "offer any indication of specific mental limitations" when assessing whether the evidence adduced by Hankins meets her de minimis burden. AR at 30. But Newell, McCrea and Magwood apparently foreclose the ALJ from framing her decision in terms of the weight and credibility she affords to various pieces of medical evidence at step two. See Magwood v. Comm'r of Soc. Sec., 417 F. App'x 130, 132 (3d Cir. 2008) (finding the ALJ "ignored" the Court of Appeals' instructions in Newell and McCrea to "focus upon the evidence adduced by the applicant" when the ALJ weighed the claimant's medical evidence and treating physician's opinion "against the consultative examination of a psychologist and a consultative review of a psychiatrist").

10

was more than a "slight abnormality and not "groundless" given that at least two medical reports identified Hankins' depression as severe and her primary care physician identified her depression as a primary diagnosis, despite the clear limitations of those reports.[2] See AR at 278. Regardless, I need not reach this question because I will now consider whether the ALJ committed harmless error at step two.

### B. Harmless Error

Hankins argues that the ALJ erred because she "found [ ] Hankins' depression non-severe (therefore never including any limitations stemming from her psychological issues)." Dkt. No. 9 at 9. The R&R agrees that the ALJ committed error at step two, but does not consider whether that error was made harmless by the ALJ appropriately accounting for mental impairment in the RFC determination. The Commissioner contends that, because the ALJ did not make Hankins' final disability determination at step two and also considered the impact of her mental impairment in the RFC determination, the ALJ's failure to consider Hankins' mental impairment as "severe" did not change the outcome of the ALJ's final disability determination and was therefore harmless error. See Dkt. No. 20 at ECF 10-11; Dkt. No. 18 at ECF 13-14. Hankins argues that the RFC determination, however, did not adequately account for her mental impairments and that a finding of severity would have altered the RFC determination in some

---

[2] Besides the absence in her treating physician's report of any specific mental limitations, Dr. Corbman's use of a check-the-box form to indicate the specific limitations caused by Hankins' mental impairment with no written justification for the limitations selected is concerning. See AR at 301-02. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Indeed, Dr. Galdieri notes that Dr. Corbman's limitation conclusions appeared to be an "overestimation." AR at 81. The medical evidence in support of finding Hankins' mental impairment severe treads a fine line of consisting simply of three "diagnoses [which] alone are insufficient to establish their severity at Step Two." Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 (3d Cir. 2007). But unlike in Salles, where "there [was] no evidence" the claimant's impairments "resulted in functional limitations" here the physicians' medical reports at least amount to evidence, if rather conclusory, of some functional limitation. Id.

11

unspecified manner. Dkt. No. 18 at 16.

"[E]ven if an ALJ erroneously determines at step two that one impairment is not 'severe,' the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five." McClease v. Comm'r of Soc. Sec., No. 08-1673, 2009 WL 3497775, at *10 (E.D. Pa. Oct. 28, 2009); see also Jones, 2011 WL 4478489, at *9 (collecting cases) ("[E]ven if plaintiff's medical condition was included among his severe impairments, the ALJ had included medical information regarding plaintiff's [ ] condition in his RFC analysis and had assigned the lowest job classification. There is no evidence to suggest that classifying [the plaintiffs'] condition as a severe impairment would have resulted in a different RFC or job classification."); Padilla v. Comm'r of Soc. Sec., No. 14-007, 2015 WL 1006262, at *9 (D.N.J. Mar. 6, 2015) (collecting cases) (finding that "even if the ALJ erred in finding Plaintiff's obesity and alleged emotional limitations non-severe, any error would be harmless, because the ALJ found in favor of Plaintiff at step two on the basis of his intellectual disability, and ultimately considered the effect of the non-severe impairments in assessing Plaintiff's residual functional capacity").

Here, while the ALJ determined that Hankins' mental impairment was non-severe, she still considered evidence in the record regarding the functional limitations imposed by Hankins' mental impairment in the RFC determination. See AR at 32-33. As in Jones, the ALJ "included medical information regarding plaintiff's [mental] condition in h[er] RFC analysis and [ ] assigned the lowest job classification." Jones, 2011 WL 4478489, at *9. The ALJ identified only "unskilled work" at step five as appropriate for Hankins, which is the least mentally strenuous type of work recognized by the Commissioner and involves only "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time [usually 30 days]." 20 C.F.R. § 404.1568(a), 416.968(a). Unskilled "jobs ordinarily involve dealing

primarily with objects, rather than with data or people . . . ." SSR 85-15, 1985 WL 56857, *4 (1985). Hankins has presented "no evidence to suggest that classifying h[er] [mental] condition as a severe impairment would have resulted in a different RFC or job classification." Id. Thus, "remand would not affect the outcome of the case and is not warranted." Roberts v. Astrue, No. 02:08-0625, 2009 WL 3183084, at *5 (W.D. Pa. Sept. 30, 2009). While I will adopt the R&R to the extent it found the ALJ erred in the analysis at step two of Hankins' claim, I will also find that the ALJ's error was harmless and will modify the R&R to the extent that it remands to the ALJ for further review of this issue. Remand is not warranted here. Thus, I will overrule the Commissioner's third objection in part and rule in favor of the Commissioner in part.

**VI.     ALJ's Consideration of Mental Impairment in the RFC Determination**

Hankins contends that because the "ALJ rejected every mental health opinion of record" the ALJ's "RFC finding in regard to Ms. Hankins' mental impairments is based upon her own lay analysis" and therefore "failed in her duty to properly construct the RFC finding" based on medical evidence. Dkt. No. 14 at 7; see also Dkt. No. 9 at 9. This is a distinct question from whether the ALJ improperly weighed medical evidence and credibility at step two. Because the R&R stops its analysis at step two, it does not address whether the ALJ's RFC analysis with regard to Hankins' mental impairments was proper.

This issue as briefed by the parties primarily revolves around how to interpret the Court of Appeals' opinion in Morales v. Apfel, 225 F.3d 310 (3d Cir. 2000). In Morales, the ALJ rejected the claimant's treating physician's opinion that the claimant was "seriously limited" in his ability to perform work related tasks and instead adopted the opinions of non-examining physicians. Morales, 225 F.3d at 315. The ALJ "rejected [the physician's] evaluation based on his personal observations of [the claimant] at the administrative hearing, the evidence in the record of malingering, and notations in [the physician's] treatment notes that [the claimant] was

13

stable and well controlled with medication." Id. at 317. The Court of Appeals reasoned that an "ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." Id. (internal citations omitted).

"The law is clear, however, that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown, 649 F.3d at 197 n.2. "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). Indeed, "[t]he ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." Kertesz v. Crescent Hills Coal Co., 788 F.2d 158, 163 (3d Cir. 1986). Thus, in Torres v. Barnhart, 139 F. App'x 411, 415 (3d Cir. 2005) the Court of Appeals distinguished from Morales in finding that an ALJ did not "inappropriately reject the treating physician's opinion on the basis of credibility judgments, speculation, or lay opinion" where "the ALJ's finding was based on the objective medical evidence contained in the psychotherapy treatment notes, and is not overwhelmed by contrary evidence in the record."

Morales is likewise distinguishable from this case for numerous reasons. First, there is little doubt that the ALJ acted reasonably in giving little weight to the opinion of Hankins' treating physician Dr. Manolo at the RFC stage because the doctor "did not offer any indication of specific mental limitations." AR at 30; see also AR at 34 ("[t]reating medical sources have failed to document specific claimant actions or medical events indicating or suggesting marked or extreme psychological restrictions"). In contrast to the opinions rendered by the treating physician in Morales, here the sum of Dr. Manolo's report with respect to Hankins' mental impairment is simply a checked box indicating that Hankins is "temporarily disabled at least in

part because of a depression impairment." AR at 278. The disability finding itself is reserved to the Commissioner. See Chandler, 667 F.3d at 362. Additionally, "diagnoses alone are insufficient to establish their severity" even at step two, let alone functional limitations in the RFC determination. Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 (3d Cir. 2007). Where there is "virtually no supporting explanation" in a doctor's report, that "by itself would justify the ALJ's decision to accord [it] little weight." Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 119 (3d Cir. 2012). Dr. Manolo did not even fill out a "checklist form" of the type indicating the functional limitations caused by her depression completed by Dr. Corbman, the consulting psychiatrist. Without any findings or analysis of functional limitations, Dr. Manolo's opinion is of little help in determining the severity of Hankins' mental impairment. Further, Dr. Manolo, while he is apparently considered a treating physician, based his evaluation in the record only on "review of medical records" and "clinical history" and he did not base his assessment on a physical examination or tests and diagnostic procedures. AR at 278.

Second, unlike in Morales, the ALJ also did not "reject outright" the medical opinions of the physicians of record. Instead, "[w]here the ALJ is discounting, rather than rejecting the weight of the opinion evidence, he must 'consider all the evidence and give some reason for discounting the evidence.'" Conover v. Colvin, No. 13-6413, 2014 WL 7012502, at *15 (D.N.J. Dec. 12, 2014) (finding that where physician's opinions were "unsupported" by "various examination notes . . . the ALJ's reason for discounting the weight of [the physician's] opinion evidence was based on substantial evidence."), citing Plummer, 186 F.3d at 429. For example, the ALJ reached the same conclusion, see AR at 33, as Dr. Corbman that Hankins' ability "to understand, remember and carry out instructions" was not significantly affected by her mental impairment. AR at 301. The ALJ granted little weight to Dr. Corbman's opinion generally,

however, because (1) it followed a single medical consultation of limited duration; (2) appears to place greater weight on the claimant's own description of her mental limitation than the medical evidence substantiates; and (3) because his opinions are not supported by the absent evidence of a significant, continuing mental health treatment regimen. AR at 30; see also AR at 35 (incorporating prior step-two analysis of medical opinions into RFC determination). The ALJ's first point is sufficient to indicate that Dr. Corbman is not Hankins' treating physician and thus Morales does not apply squarely to the ALJ's consideration of his opinion. See Morales, 225 F.3d at 317 (addressing when an ALJ "may reject a treating physician's opinion outright"). As to the second point, Dr. Galdieri, a non-examining agency medical consultant, also considered Dr. Corbman's conclusions regarding Hankins' functional limitations to be an "overestimation" and assigned lower functional limitations. AR at 81. Finally, lack of evidence of medical treatment can provide "ample reason" to exclude limitations from an RFC. Salles, 229 F. App'x at 148.

Third, Dr. Corbman's use of a check-the-box form to indicate the specific limitations caused by Hankins' mental impairment with no written justification for the limitations selected is concerning. "[C]hecklist forms . . . which require only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a disability analysis." Smith v. Astrue, 359 F. App'x 313, 316 (3d Cir. 2009), citing Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Further, an "ALJ [is] entitled to accord lesser weight to [a doctor's] opinion because it was provided in a check-box form and he did not provide any reasons in support of his various conclusions." Prokopick v. Comm'r of Soc. Sec., 272 F. App'x 196, 199 (3d Cir. 2008). Again,

where there is "virtually no supporting explanation" in a doctor's report, that "by itself would justify the ALJ's decision to accord [it] little weight." Cunningham, 507 F. App'x at 119.

Given the conclusory nature of much of the medical evidence regarding functional limitations, it is important to note that "[a] lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC." Salles, 229 F. App'x at 148. The ALJ accurately considered evidence in relation to Hankins' RFC determination that despite her mental impairment Hankins continued to work after the onset of her depression (AR at 32), that she had regular and consistent contact with her family members and is able to get along with them (AR at 32-33), that she worked part-time for six months until June 2012 indicating she could get along with others (AR at 33), that she could use public transportation, prepare meals for her family, do house work and go out unaccompanied. Id. She could pay attention, finish tasks, understand directions, did not need to be reminded to take medication and had a variety of hobbies and interests. Id. Based on this record evidence the ALJ concluded "the level of activity as reported does not equate with the severity of functional impairment as alleged." Id. The ALJ also considered the medical evidence in the record, noting that Dr. Corbman reported that while Hankins displayed a "tearful affect" she was appropriately dressed, maintained eye contact, was expressive, cooperative, oriented, goal directed, had no memory deficits, no thought disorders, delusions, hallucinations or morbid preoccupations and had no history of a mental health treatment regimen. AR at 33, 35. Thus, I find the ALJ's consideration of Hankins' mental impairment in the RFC determination is supported by substantial evidence in the record and was not based on impermissible lay opinion or unexplained rejection of medical opinion.

**V.     Deference to Treating Physicians' Conclusions Regarding Physical Limitations**

Another issue raised by the parties' opening briefs but that is not addressed directly by the R&R is whether the ALJ failed to give proper deference to Hankins' treating physicians regarding her physical disability.  Hankins contends that

> [t]he fundamental problem[ ] in this case is that after stating at the hearing that Dr. Marcotte's opinion (treating neurosurgeon) was 'reasonable' and declaring that Ms. Hankins' records were consistent with a finding of a closed period of disability, the ALJ rejected this opinion and three other opinions that were consistent with a finding of disability (Drs. Williams, Manalo, and Corbman) (Tr. 34-35).

Dkt. No. 14 at ECF 8.

First, Dr. Marcotte signed a letter sent by Nurse Practitioner Fontenot on August 23, 2012 stating that "we do not feel [Hankins] is able to return to work at this time."  AR at 425. Hankins' argument appears closely related to the issues of whether the ALJ accounted for Hankins' hospitalizations and recovery time as well as whether the ALJ assessed the medical evidence regarding her mental impairment in the RFC determination, issues that have already been found in favor of the Commissioner.

"[A]n ALJ does not give any 'special significance' to a physician's opinion that a patient is unable to work because the agency is responsible for determining whether a claimant meets the statutory definition of disability."  Cunningham, 507 F. App'x at 118-19, citing 20 C.F.R. § 404.1527(d)(3).  Dr. Marcotte and Nurse Fontenot's conclusion regarding Hankins' ability to work is entitled to no special deference.  The ALJ, however, accounted for her reasons in not according great weight to Dr. Marcotte and Nurse Fontenot's conclusion, noting that the assessment was inconsistent with Hankins' self-reported activities, not supported by the routine, conservative outpatient care she had received prior to May 2012, did not address the severity of

18

her functional limitations prior to May 2012 and did not take into consideration the potential for medical improvement. See AR 34-35. Similarly, Dr. Manolo's conclusion that Hankins was "temporarily disabled" from February 1, 2010 to December 31, 2011 was not entitled to special deference. AR at 278. The ALJ properly noted that Dr. Manolo "failed to offer any indication or description of the specific medical observations utilized to form the basis of his opinion, because he did not offer any indication of specific physical limitations . . . ." AR at 34.

Second, regarding Dr. Williams' May 25, 2012 report on Hankins' ability to do work-related activities, the ALJ did not simply reject Dr. Williams' evaluation of Hankins' physical limitations. Dr. Williams' evaluation was performed shortly after Hankins' May 2012 back surgery. Her May and July surgeries resulted in her feeling "much better." AR at 424. The ALJ's statement that she "granted little weight" to Dr. Williams' May 2012 opinions was at least in part "because they closely follow the May and July 2012 corrective surgeries . . . ." AR at 34. The ALJ also reasoned that Williams' report "does not take into consideration the potential for medical improvement" and also "does not address the severity of the claimant's functional limitations prior to May 2012 . . . ." AR at 35. The ALJ concluded, and the R&R supports this finding, that "there is no substantiation that any resultant functional limitations [would] continue for a period of twelve months or more . . . ."[3] AR at 34; Dkt. No. 19 at ECF 9. For that and similar reasons, the R&R found that the ALJ had properly considered Hankins hospitalizations, surgeries and recovery time in deciding whether Hankins could work on a regular and continuing basis. Dkt. No. 19 at ECF 9. The ALJ's analysis does not show she gave improper deference to Dr. Williams' report, but rather shows that the report had limited relevance to many of the

---

[3] The ALJ also found some of Dr. Williams' specific opinions in May 2012 such as that Hankins was incapable of standing more than one hour out of eight or sitting for more than two hours out of eight were inconsistent with Hankins' later self-reported activities. See AR at 34.

factors the ALJ ultimately found weighed against a final determination of disability.  Further, the ALJ evaluated the record as a whole, including Hankins' statements regarding her functional limitations in daily activities, and grounded her decision in that record evidence.  Thus, I will find that the ALJ's decision was supported by substantial evidence and that she did not improperly fail to give deference to the medical opinions of Hankins' treating physicians.

## CONCLUSION

For the foregoing reasons, I will affirm and adopt the R&R's finding that the ALJ properly accounted for Hankins' hospitalizations, surgeries and recovery time in the RFC determination and that the ALJ committed error in the analysis of Hankins' mental impairment at step two.  I also find the R&R properly did not consider the step one analysis the ALJ deferred deciding upon.  I will not adopt the R&R's finding that the ALJ insufficiently considered Hankins' obesity and I find that the ALJ's errors at step two were harmless.  I also find that the ALJ's RFC determination was supported by substantial evidence and that the ALJ did not fail to show proper deference to the opinions of Hankins' treating physicians.  Thus, I will not remand the case to the ALJ for further review and instead will affirm the ALJ's decision.

An appropriate Order follows.